**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                        Case No:   3:13-cv-1520-J-32JBT

DIERS, INC.,

     Defendant.

---

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                        Case No:   3:13-cv-1521-J-32MCR

FAULKNER-CIOCCA FORD OF
QUAKERTOWN, INC., CIOCCA
HONDA, INC., and CIOCCA
HYUNDAI OF LEBANON, INC.,

     Defendants.

---

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                        Case No:   3:13-cv-1522-J-32JRK

KING'S COLONIAL FORD, INC.,

     Defendant.

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                      Case No:   3:13-cv-1523-J-32MCR

RIVERSIDE FORD, INC.,

      Defendant.

---

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                      Case No:   3:13-cv-1524-J-32MCR

FRANK JACKSON SANDY SPRINGS
FORD, LLC,

      Defendant.

---

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                      Case No:   3:13-cv-1598-J-32MCR

FUTURE FORD SALES, INC.,

      Defendant.

---

# **O R D E R**

This case is before the Court on AppSoft's Motion to Disqualify Defendant's

Counsel (Doc. 17)[1] to which Defendants responded (Doc. 19) and the related filings

---

[1] All citations in this Order refer to the docket number in AppSoft Development, Inc. v. Diers Inc., 3:13-cv-1520-J-32JBT. Identical motions were filed in the related cases and this Order will apply in each.

(Doc. 20, 21, 23). This Court heard oral argument on the motion on April 28, 2014, and the transcript of that hearing is incorporated herein.

AppSoft seeks to disqualify Marks Gray from representing Defendants in each of these six related cases on three grounds. First, it asserts that Jill Bechtold, now an attorney at Marks Gray, currently represents AppSoft. Second, and alternatively, it alleges Bechtold previously represented AppSoft on a substantially related matter. Third, it alleges that another Marks Gray lawyer, Crystal Broughan, has previously represented AppSoft in a substantially related matter.

Motions to disqualify counsel are governed by the standards of the Florida Rules of Professional Conduct. Etkin & Co., Inc. v. SBD LLC, 11-21321-CIV, 2012 WL 5398966, at *2 (S.D. Fla. Nov. 5, 2012). The party seeking disqualification bears the burden of proof. Blue Heron Beach Resort Developer, LLC v. Branch Banking & Trust Co., 6:13-CV-372-ORL-19, 2014 WL 644734, at *3 (M.D. Fla. Feb. 19, 2014). The moving party must demonstrate that a specific Rule of Professional Conduct is applicable. Herrmann v. GutterGuard, Inc., 199 F. App'x 745, 752 (11th Cir. 2006). Motions to disqualify are viewed with caution, as disqualification can impose substantial hardships upon a client. Id. Therefore, a party's right to the counsel of its choice can only be overridden in the presence of compelling reasons. Id.[2]

---

[2] Seemingly in contrast is the statement of a number of district courts that any doubt about the issue should be resolved in favor of disqualification. See, e.g., McPartland v. ISI Inv. Servs., Inc., 890 F. Supp. 1029, 1031 (M.D. Fla. 1995). While this statement of law has support in decisions from other circuits, the Eleventh Circuit has never stated that doubt should be resolved in favor of disqualification.

## I.      BECHTOLD'S REPRESENTATION OF APPSOFT

In 2011, AppSoft retained Mathis & Murphy to represent it in a lawsuit against Web Marketing Pros, Inc., PR Interactive, LLC, and Peter Roesler. (Doc. 19 at 1). Jill Bechtold, then an attorney at Mathis & Murphy, was assigned to work the case under senior partner Kelly Mathis. (Doc. 19-1 at 2). The case revolved around Peter Roesler, who, after being fired from AppSoft, created two web site design companies, allegedly in violation of his non-compete agreement with AppSoft. (Doc. 19-1 at 15). Roesler allegedly solicited AppSoft customers and used various websites created during his employment at AppSoft as examples on his new companies' website homepages. (Doc. 19-1 at 16). AppSoft alleged that this behavior demonstrated a breach of his employment agreement, as well as an illegal "passing off" of those websites as his creations, not Appsoft's. (Doc. 19-1 at 16-18).

Bechtold last filed pleadings in the Roesler case in September 2011, when she filed the complaint and jury demand. (Doc. 19 at 2). Defendants in that case filed a motion to dismiss on October 4, 2011. (Doc. 19 at 2). After no other documents were filed in the case for more than two years, defendants filed a notice of lack of prosecution on February 13, 2014. (Doc. 19-1 at 25). Until that time, AppSoft was unaware that the case remained open. (Doc. 17 at 2).

Apparently unbeknownst to AppSoft, Bechtold left Mathis & Murphy for Marks Gray on May 1, 2013. (Doc. 19 at 2). At that time, she gave Marks Gray a list of clients she was bringing with her from Mathis & Murphy. (Doc. 19 at 2). That list did not include AppSoft. (Doc. 19 at 2). Bechtold also, in conjunction with a senior partner at

Mathis & Murphy, sent letters to those clients she sought to bring with her to Marks Gray. (Doc. 19 at 3). She did not send a letter to AppSoft. (Doc. 19 at 2). However, she also did not file a notice of withdrawal in the Roesler case. (Doc. 19 at 2).

### A.   Whether Jill Bechtold Currently Represents AppSoft

An attorney may not represent a client if that representation would be directly adverse to another client. RULES REGULATING THE FLORIDA BAR R. 4-1.7. A lawyer's conflicts are imputed to her entire firm. R. 4-1.10. Marks Gray contends that it does not currently have an attorney-client relationship with AppSoft. (Doc. 19 at 7).

While no case law explicitly defines when an attorney-client relationship ends, the comments to the Rules provide some illumination. A comment to Rule 4-1.7 states that, to determine whether a lawyer-client relationship is continuing, lawyers should look to the "comment to rule 4-1.3 and scope." The most applicable comment in Rule 4-1.3 is that, "If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved." The Florida Rules of Judicial Administration state that an attorney's *appearance* terminates only upon a motion for withdrawal, substitution of a different attorney, termination of the proceeding, or the filing of a notice of completion of the representation. Rule 2.505(f).

RULES REGULATING THE FLORIDA BAR R. 4-5.8(c)(1) discusses the specific issue of lawyers leaving law firms and states that, "Absent a specific agreement otherwise, a lawyer who is leaving a law firm shall not unilaterally contact those clients of the law firm for purposes of notifying them about the anticipated departure or to solicit representation of the clients" unless bona fide negotiations with the law firm have

proven unsuccessful. A comment to that rule states further that, "If the departing lawyer and the law firm have agreed regarding who will continue handling the client's matters then, absent disagreement by the client, the agreement normally will determine whether the departing lawyer or the law firm will continue the representation." R. 4-5.8 cmt.

Here, the only evidence supporting an existing relationship is that Bechtold apparently forgot to file a motion to withdraw from the Roesler case. Even though Bechtold's "appearance" may therefore still be technically continuing under the Florida Rules of Judicial Administration, she still lacks a current attorney-client relationship with AppSoft.

First, an attorney-client relationship limited to a specific matter ends when that matter is resolved. R. 4-1.3 cmt. For all intents and purposes, the long dormant Roesler case was "resolved" before the instant cases were initiated in December 2013 because AppSoft, the plaintiff in the Roesler action, believed it was resolved. (Doc. 17 at 1).[3] Bechtold did not represent the company in any other matter, nor did AppSoft attempt to contact Bechtold or have her represent them in either the instant cases or in a state court case AppSoft recently filed against Christian Jorn, Justin Shannon, and Remora, Inc. Therefore, until it recently discovered that the Roesler case remained open, AppSoft had no reason to believe that Bechtold was its attorney in any matter. Bechtold similarly believed that AppSoft was not her client, and therefore she thought

---

[3] It is not clear why the case sat unattended for over two years or how AppSoft believed the case had been resolved, although AppSoft represented at the hearing that it had been interested in a dismissal by agreement of the parties in that case.

that, if any work was left to be done in the Roesler case, it would be handled by Mathis & Murphy. (Doc. 19-1 at 4). Accordingly, as far as the principals were concerned, the matter was resolved and the attorney-client relationship was terminated.

Second, even if the rediscovery of the not-technically-closed Roesler case reopened the attorney-client relationship, that relationship would be with Mathis & Murphy, not Bechtold. When an attorney leaves a law firm, the assumption is that she is not taking her clients with her. See R. 4-5.8(c)(1). Further, the comments to Rule 4-5.8 state that an agreement between a law firm and a departing lawyer normally determines which will continue the representation. It appears that Bechtold and Mathis & Murphy agreed that the firm would continue whatever representation remained. Bechtold did not try to take AppSoft with her as a client when she left Mathis & Murphy. (Doc. 19-1 at 3). She never wrote to AppSoft to tell them she wished to take it as a client, and she left all files and documents relating to AppSoft and the Roesler case at Mathis & Murphy. (Doc. 19-1 at 3). According to Bechtold's affidavit, AppSoft contracted with the firm of Mathis & Murphy, not with Bechtold herself, to provide legal services. (Doc. 19-1 at 1). The complaint in the Roesler case supports this statement, as it asserts that, "AppSoft has retained the law firm of Mathis & Murphy, P.A." (Doc. 17-1 at 10). Fittingly, therefore, AppSoft and Bechtold have not communicated since before Bechtold left for Marks Gray. (Doc. 19-1 at 3-4).[4]

---

[4] AppSoft asserted at the hearing that Bechtold did speak to AppSoft by e-mail shortly before her departure on matters related to the Roesler case. However, AppSoft chose not to enter the e-mail as an exhibit and could not tell the Court what the e-mail was about. Regardless, it is uncontested that Bechtold and AppSoft have not spoken since she left the Mathis & Murphy. Appsoft's counsel in this case has recently filed a

Even if Bechtold sought to take AppSoft as a client when she left Mathis & Murphy, under the Rules Regulating the Florida Bar R. 4-5.8(c)(1), she would not have been allowed to unilaterally contact AppSoft to inform them of her departure or solicit their business unless she had engaged in bona fide negotiations with Mathis & Murphy that were unsuccessful. Therefore, as Bechtold never asked her firm to take AppSoft's business with her, Bechtold could not now represent AppSoft in the Roesler case without violating the Rules Regulating the Florida Bar.

Thus, despite the fact that her appearance has not technically terminated in the Roesler case, Bechtold does not represent AppSoft in that case, and there is no current conflict of interest.

## B.   Whether the Roesler Case was a Substantially Related Matter

"A lawyer who has formerly represented a client in a matter shall not thereafter [r]epresent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." R. 4-1.9. AppSoft argues that Bechtold, and by imputation Marks Gray, are disqualified because AppSoft "held extensive discussions with Ms. Bechtold regarding its software and websites." (Doc. 17 at 6). Marks Gray asserts that these federal cases are not the "same or a substantially related matter" to the Roesler case on which Bechtold worked. (Doc. 19 at 10).

The comment to Rule 4-1.9 states that, "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the

---

notice of appearance in the Roesler case representing AppSoft. (Doc. 19 at 5).

current matter would involve the lawyer attacking work that the lawyer performed for the former client."[5] Thus, for example, where both matters involve the same fraudulent scheme, the same misrepresentations, and the same motivations, they are substantially related. In re Skyway Commc'ns Holding Corp., 415 B.R. 859, 869 (Bankr. M.D. Fla. 2009).

The cases at issue here involve claims that Defendants joined with Remora, Inc. to appropriate software copyrighted by AppSoft, used to create websites, and have used and distributed that software to create derivative websites without giving any credit to AppSoft. (Doc. 1 at 7-13). In contrast, the Roesler case was about whether Roesler breached his employment agreement by illegally competing with AppSoft for business, and whether he illegally passed off websites as his own creations, rather than AppSoft's creations. (Doc. 19-1 at 16-17).

It is not apparent from a comparison of the complaints, nor has AppSoft submitted any other evidence suggesting, that this case is at all related to the Roesler case. Therefore, AppSoft has not met its burden of demonstrating that Marks Gray is subject to disqualification because of Bechtold's prior representation of AppSoft in the Roesler case.

---

[5] Notably, this comment was added in the 2006 amendment to the Rules. In re Amendments to the Rules Regulating The Florida Bar, 933 So. 2d 417, 445 (Fla. 2006). Before that amendment, matters needed only to be such that a reasonable person would understand the cases to have important similarities as to the issues involved. McPartland v. ISI Inv. Servs., Inc., 890 F. Supp. 1029, 1031 (M.D. Fla. 1995).

## II.     BROUGHAN'S REPRESENTATION OF APPSOFT

AppSoft argued at the hearing that Crystal Broughan's prior representation of AppSoft in a substantially related matter disqualifies Marks Gray from representing Defendants in these cases. According to AppSoft, Broughan was present in October 2013 when AppSoft discussed "issues related to the present matter" with Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. (Doc. 17 at 2). She subsequently left Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. and joined Marks Gray. (Doc. 17 at 2). Around that time, AppSoft instituted a case in state court against Christian Jorn, Justin Shannon, and Remora, Inc., who were represented by Marks Gray. (Doc. 5 at 40). There, AppSoft alleged violations of non-compete agreements, tortious interference in AppSoft's business relationships with its customers, and misappropriation of trade secrets. (Doc. 5 at 45-47).

AppSoft waived any conflict of interest related to Broughan in that state court matter. (Doc. 17 at 2). At the hearing, AppSoft clarified that it had not, however, waived any conflict with respect to Broughan in these federal cases.

Notably, this fact was not apparent from AppSoft's Motion to Disqualify. (See Doc. 17). The affidavit submitted by John Widdows, AppSoft's president and owner, focused on distinguishing Broughan's move to Marks Gray, which involved prompt disclosure, from Bechtold's move, which AppSoft only found out about recently. Widdows asserted that "AppSoft elected not to seek to disqualify Marks Gray concerning its hiring of Ms. Broughan . . . because Ms. Broughan made a prompt disclosure that she would be joining . . . Marks Gray [and it] agreed to implement what

[Appsoft] thought would be appropriate procedures to prevent disclosure of attorney-client information." (Doc. 17-1 at 5). Far from supporting a motion to disqualify based on Broughan, Widdows' affidavit belies any concern AppSoft may have had with Broughan's affiliation with Marks Gray.

The lack of emphasis on Broughan in the pleadings means that too many unanswered questions remain for this Court to find a conflict based on her affiliation with Marks Gray. Aside from a vague assertion that Broughan was present for a discussion of issues "related to the current case", there is no record evidence that Broughan represented AppSoft in any prior matter. (Doc. 17-1 at 5). AppSoft devoted only a sentence in its pleading to argument demonstrating that the instant cases are substantially related to a case that Broughan worked on. (Doc. 17 at 6). There is also no record evidence explaining why, despite the fact that AppSoft knew about Broughan's affiliation with Marks Gray last year, it waited until now to raise the disqualification issue concerning her.

Moreover, Marks Gray has not had an adequate opportunity to respond to the motion as it pertains to Broughan. Marks Gray asserts that, contrary to Local Rule 3.01(g), AppSoft's counsel never consulted with Marks Gray with respect to Broughan's affiliation with the firm. (Doc. 23). As AppSoft's motion to disqualify did not clearly establish that it was seeking disqualification because of Broughan, Marks Gray asserted at the hearing that it was not aware that Broughan's affiliation with the firm might present an issue until the day of the hearing.

Accordingly, it is hereby

**ORDERED:**

1.     AppSoft's Motion to Disqualify Defendant's Counsel (Doc. 17) is **DENIED**.

2.     If it believes it should do so, AppSoft may file a new motion to disqualify based on Broughan's affiliation with Marks Gray. That motion must be filed, if at all, by **May 28, 2014**.

3.     If AppSoft does not file another motion to disqualify, the Court will return to consideration of the motions to dismiss and to consolidate. In that event, the Court will hold a hearing on those pending motions on **June 30, 2014** at **10:00 a.m.** in Courtroom 10D.

4.     If, AppSoft does file another motion to disqualify, the Court will defer consideration of the motions to dismiss and to consolidate until after resolution of the motion to disqualify. Defendants will respond to any renewed motion to disqualify by **June 16, 2014**. The Court will hear any renewed motion to disqualify on **June 30, 2014** at **10:00 a.m.**

**DONE AND ORDERED** in Jacksonville, Florida the 12th day of May, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies to:

Counsel of record