**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                                                 Case No:   3:13-cv-1520-J-32JBT

DIERS, INC.,

      Defendant.

_____

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                                                 Case No:   3:13-cv-1521-J-32MCR

FAULKNER-CIOCCA FORD OF
QUAKERTOWN, INC., CIOCCA
HONDA, INC., and CIOCCA
HYUNDAI OF LEBANON, INC.,

      Defendants.

_____

APPSOFT DEVELOPMENT, INC.,

      Plaintiff,

v.                                                                 Case No:   3:13-cv-1522-J-32JRK

KING'S COLONIAL FORD, INC.,

      Defendant.

_____

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                Case No:  3:13-cv-1523-J-32MCR

RIVERSIDE FORD, INC.,

     Defendant.

_____

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                Case No:  3:13-cv-1524-J-32MCR

FRANK JACKSON SANDY SPRINGS
FORD, LLC,

     Defendant.

_____

APPSOFT DEVELOPMENT, INC.,

     Plaintiff,

v.                                Case No:  3:13-cv-1598-J-32MCR

FUTURE FORD SALES, INC.,

     Defendant.

_____

## **O R D E R**

Appsoft Development, Inc. has brought six related suits against car dealerships alleging copyright infringement, destruction of copyright management information, and breach of contracts. In each case, Defendants have filed a motion to dismiss[1] and

---

[1] The motions to dismiss are at 3:13-cv-1520 Doc. 5, 3:13-cv-1521 Doc. 4, 3:13-cv-1522 Doc. 7 and 8, 3:13-cv-1523 Doc. 9, 3:13-cv-1524 Doc. 11, and 3:13-cv-1598 Doc.

AppSoft has responded[2]. Four defendants have filed an affidavit in support of their motion to dismiss.[3] Defendants have also filed a motion to consolidate (Doc. 11)[4], to which AppSoft has responded in partial opposition (Doc. 12). The Court heard oral argument on all pending motions on June 30, 2014, the record of which is incorporated herein. (Doc. 28).

## I.   FACTS[5]

AppSoft is a Jacksonville, Florida company that has developed a "highly specialized web-based software system for automotive dealerships". (Doc. 1 at 3). AppSoft uses this software to develop websites for car dealerships. (Doc. 1 at 3). These websites are hosted on servers in Jacksonville. (Doc. 1 at 4). AppSoft separately contracted with Defendants, car dealerships from across the country, to install the software system on Defendants' websites as part of a search engine optimization (SEO) campaign. (Doc. 1 at 4). In each case, AppSoft did not provide Defendants with access to the source code for the software. (Doc. 1 at 4). AppSoft also retained the exclusive

---

6.

[2] The responses to the motions to dismiss are at 3:13-cv-1520 Doc. 10, 3:13-cv-1521 Doc. 5, 3:13-cv-1522 Doc. 12, 3:13-cv-1523 Doc. 30, 3:13-cv-1524 Doc. 15, and 3:13-cv-1598 Doc. 10.

[3] Those affidavits can be found at 3:13-cv-1520 Doc. 9, 3:13-cv-1521 Doc. 6, 3:13-cv-1523 Doc. 10, and 3:13-cv-1598 Doc. 9.

[4] Unless otherwise indicated, all citations are to 3:13-cv-1520.

[5] As these cases are before the Court on a motion to dismiss, the Court takes as true the facts in the complaints and attached exhibits. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).

right to reproduce any work product created during the term of the contracts with Defendants. (Doc. 1-2 at 8).

In September 2013, Matthew Taylor, then an Appsoft employee, allegedly transferred a copy of the AppSoft software to a third-party server. (Doc. 1 at 5). On September 23, 2013, Christian Jorn resigned from AppSoft. (Doc. 1 at 5). On September 24, 2013, Taylor and Justin Shannon also resigned from AppSoft, and joined with Jorn and Gregory Waitcus to form Remora, Inc. (Doc. 1 at 5). Defendants subsequently transferred control of their websites from AppSoft to Remora. (Doc. 1 at 6).

According to the complaints, Defendants "worked with Remora to knowingly and intentionally appropriate and use the [AppSoft software] and to develop an unauthorized derivative version of [it]." (Doc. 1 at 6). Three key sections of the source code used to create Defendants' current websites are allegedly identical to AppSoft's software's source code. (Doc. 1 at 7). Despite this fact, Defendants' websites do not link to AppSoft's website, nor do they identify AppSoft as the author of the software. (Doc. 1 at 10-11).

AppSoft received a certificate of copyright registration for its software effective November 20, 2013. (Doc. 1-1 at 2). AppSoft then brought this suit against Defendants for copyright infringement, destruction of copyright management information, and breach of contract. (See, e.g., Doc. 1 at 7-13). Appsoft alleges that Defendants have infringed their copyright by "advertising, marketing, designing, developing, using, and distributing an identical or derivative version of the Copyrighted Work which

Defendant continues to use in connection with Defendant's website." (Doc. 1 at 8). Further, Appsoft states that Defendants have "copied, made derivatives, reproduced or distributed one or more copies of the Copyrighted Work throughout the United States". (Doc. 1 at 8).

On September 27, 2013, AppSoft filed a lawsuit in state court against Jorn, Shannon, and Remora seeking injunctive relief for breaches of non-compete agreements and misappropriation of trade secrets. (Doc. 5 at 65). However, the state court ruled that, because AppSoft did not encrypt its code or otherwise take reasonable steps to maintain the secrecy of its alleged trade secret, AppSoft was not entitled to injunctive relief on the trade secret claim. (Doc. 5 at 69). The parties in the state court action are currently arguing over whether this order was a final ruling on a permanent injunction or only a ruling on a preliminary injunction.

## II.   LAW

Defendants seek dismissal of the complaints, and, in the alternative, ask for a stay of these actions pending resolution of the state court case.[6] As the state court case involves different parties and different issues, a stay is unwarranted.

### A.   Personal Jurisdiction

Four of the six defendants seek dismissal for lack of personal jurisdiction. Personal jurisdiction over Defendants must satisfy both the Florida long-arm statute and Fourteenth Amendment due process requirements. PVC Windoors, Inc. v.

---

[6] In addition to the grounds addressed in this Order, Defendants initially moved to dismiss the complaint on collateral estoppel grounds. However, they withdrew that contention at oral argument.

Babbitbay Beach Const., N.V., 598 F.3d 802, 807 (11th Cir. 2010); Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

Under Florida law, any person who personally or through an agent commits a tortious act within Florida is subject to jurisdiction in Florida. Fla. Stat. § 48.193(1)(a)(2) (2013).[7] A defendant who commits an act outside Florida that causes injury within the state commits a tortious act within Florida. Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1353 (11th Cir. 2013). In copyright infringement cases, the situs of injury is generally the state where the copyright owner resides. Yellow Pages Photos, Inc. v. Ziplocal, LP, 8:12-CV-755-T-26TBM, 2012 WL 2952452, at *5 (M.D. Fla. July 19, 2012).

Diers has submitted an affidavit from its vice president that states that it is a Nebraska corporation that does no business in Florida, has no customers in Florida, and has no employees in Florida. (Doc. 5 at 23).[8] Diers' vice president further states that the company's only business contact with Florida was its hiring of Florida-based companies to manage and host its website. (Doc. 5 at 24).

The complaint, however, asserts that Diers has caused damage to AppSoft in this district. (Doc. 1 at 2). AppSoft has also submitted an affidavit from its director of data development, who states that Diers' website was hosted in Jacksonville, Florida

---

[7] Copyright infringement is a tort. BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1278 (11th Cir. 2008).

[8] Riverside Ford, Inc., Future Ford Sales, Inc., and Defendants in 3:13-cv-1521 ("Ciocca Dealerships") filed similar affidavits.

at the time of the complaint, (Doc. 10-2 at 3), and that AppSoft has suffered injury in Jacksonville. (Doc. 10-2 at 4).

Even if Diers is correct that it has no presence in Florida, that fact is irrelevant under the Florida long-arm statute so long as it has committed a tortious act that caused injury in Florida. See Roca Labs, Inc. v. Boogie Media, LLC, 8:12-CV-2231-T-33EAJ, 2013 WL 2025806, at *5 (M.D. Fla. May 14, 2013).[9] Diers is alleged to have committed copyright infringement, causing harm to a company located in Florida. Accordingly, it has allegedly committed a tortious act in Florida and is subject to personal jurisdiction in Florida on the copyright infringement claim. As the other claims against Diers arise from the same jurisdiction-generating event, this Court has personal jurisdiction under the long-arm statute over the entire case. See Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993). The other defendants' arguments for dismissal for failure to satisfy the Florida long-arm statute fail for the same reasons.

While Defendants admittedly did not raise the issue in their briefing, they stated at oral argument that the exercise of personal jurisdiction over Diers, Riverside Ford, Future Ford Sales, and Ciocca Dealerships would not comply with due process. Yet, Defendants signed contracts with AppSoft, a Florida corporation, which included both a Florida choice-of-law provision and a Florida forum-selection clause. (See, e.g.,

---

[9] Defendants overlooked this fact at oral argument by arguing for the inapplicability of Fla. Stat. § 48.193(1)(a)(6) to the present case. AppSoft need not rely upon that provision, however, because of the applicability of the tortious act provision, Fla. Stat. § 48.193(1)(a)(2).

Doc. 1-2 at 5). Defendants also allegedly participated with another Florida corporation, Remora, in obtaining copyrighted software from AppSoft computers located in Florida. (Doc. 10-2). They then allegedly made a derivative of that software, causing injury to AppSoft in Florida. These cases therefore arise out of Defendants' purposefully established minimum contacts with Florida and do not offend traditional ideas of fair play and substantial justice. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

### B.    Copyright Infringement (Count I)

Defendants seek dismissal of each complaint for failure to state a claim because they assert that any misconduct was committed by Remora. (Doc. 5 at 13). On the copyright infringement claim, AppSoft asserts that it has stated a claim for both direct and indirect infringement by Defendants. (Doc. 10 at 13).

The violation of a copyright owner's exclusive rights, including the right to copy the work, distribute copies of the work, or prepare derivative works based on the copyrighted work, is an act of copyright infringement. 17 U.S.C. § 501 (2012). With respect to direct infringement, AppSoft alleges that Defendants "worked with Remora to knowingly and intentionally appropriate and use the Copyrighted Work". (Doc. 1 at 6). Further, Defendants "copied, made derivatives, reproduced or distributed one or more copies of the Copyrighted Work". (Doc. 1 at 8). However, the complaints also allege that it was Matthew Taylor who transferred an unauthorized copy of the AppSoft software to a third-party server leased and maintained by the individuals who

formed Remora. (Doc. 1 at 5). Remora also allegedly created the unauthorized derivative work. (Doc. 1 at 6).

AppSoft has only made a pair of general allegations against Defendants, without sufficient facts to state a plausible claim for direct copyright infringement. If in fact Defendants were involved in the reproduction of the software, the creation of a derivative work, or the distribution of copies of the software, the complaints do not demonstrate how that occurred.

The complaints face similar problems with respect to any claim for vicarious infringement. Vicarious infringement occurs where an individual profits from direct infringement and declines to exercise a right to stop or limit the infringement. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931 (2005). Thus, a defendant must have some right and ability to supervise the infringing conduct in order to be liable. Dream Custom Homes, Inc. v. Modern Day Const., Inc., 773 F. Supp. 2d 1288, 1311 (M.D. Fla. 2011).

The complaints allege that Defendants "controlled and supervised the content and advertising activity related to [their] Website[s], including the unauthorized and infringing use of the Copyrighted Work and derivatives thereof." (Doc. 1 at 7). This bare recitation of elements fails to allege how Defendants could control what software Remora used to create Defendants' websites. Indeed, from the face of the complaints, it appears to be standard practice that companies like AppSoft and Remora expressly

refuse their customers the right to look behind the curtain at the software used to create websites. (Doc. 1 at 4).[10]

The complaints are therefore due to be dismissed. However, AppSoft may file an amended complaint if it can in good faith allege with greater particularity how Defendants were involved in any violation of the Copyright Act.

## C.   Destruction of Copyright Management Information (Count II)

AppSoft's allegations of destruction of copyright management information have the same failings. AppSoft alleges, for example, that Defendants "intentionally removed or altered AppSoft's Copyright Management Information and/or distributed the infringing works knowing that AppSoft's Copyright Management Information had been removed or altered" and knowing that the removal, alteration, or distribution would facilitate or conceal a copyright infringement. (Doc. 1 at 11). This statement tracks the language of 17 U.S.C. § 1202(b)(1)-(2). However, the complaints fail to allege how Defendants, rather than just Remora, intentionally removed or altered copyright management information or how Defendants knew that any removal, alteration, or distribution would facilitate or conceal a copyright infringement. AppSoft likewise recites the language of § 1202(a) and makes generalized allegations that Defendants have committed the acts constituting a violation of that section. Accordingly, AppSoft has failed to plausibly state a claim for destruction of copyright management

---

[10] At the hearing, AppSoft emphasized that there is no knowledge requirement for liability for direct and vicarious copyright infringement. As discussed above, the failing in AppSoft's complaints is not the absence of allegations of knowledge; the problem is the lack of factual allegations as to what actions Defendants took or how Defendants had a right and ability to supervise infringing conduct.

information under either sub-section of § 1202. As on the copyright infringement claim, AppSoft must allege Defendants' involvement with greater particularity in any amended complaint.

### D.    Breach of Contract (Count III)

Defendants argued that the breach of contract claims should be dismissed because the contracts were either invalid or had already terminated before any alleged breach. (See, e.g., Doc. 5 at 18-19). These arguments fail because the Court cannot determine the validity of the contracts at this stage, and it is not apparent from the face of the complaints and attached contracts that the contracts' terms had terminated.

At oral argument, Defendants additionally contended that the actions AppSoft alleges to be a breach of contract are in fact consistent with the terms of the contract. AppSoft's complaints allege two breaches of contract. First, Defendants allegedly developed and used "unauthorized copies and derivative versions of the Website developed by AppSoft". (Doc. 1 at 14). Assuming that AppSoft can state with particularity how it was Defendants, not just Remora, that committed these actions, AppSoft will have stated a claim for breach of contract. The creation of unauthorized copies and derivative versions of the website potentially violates the provisions in the contracts which state that AppSoft, "will have the exclusive rights in making any derivative works from any of its work, practices, coding, programming or other work", (Doc. 1-2 at 7), and that AppSoft retained "the exclusive right to reproduce the work product" created during the agreement, (Doc. 1-2 at 8).

Defendants also allegedly fail to identify AppSoft as the true author of their websites. (Doc. 1 at 14). Even if true, it is not clear which provision of the contract this action would violate, since the contract only provides that AppSoft may put its identification in the code or on the website. (Doc. 1-2 at 7). Nevertheless, so long as AppSoft can allege a breach of the derivative works provision, it can bring a claim for breach of contract. If AppSoft wishes to re-allege that Defendants also breached their contracts by failing to identify AppSoft as the true author of the websites, it may do so, assuming it has a factual basis.

### E.    Implied Non-exclusive License

Defendants assert that they had an implied non-exclusive license in the copyrighted material, which entitles them to dismissal of the claims of copyright infringement and destruction of copyright management information. (Doc. 5 at 13-14). The existence of a non-exclusive license is an affirmative defense to a copyright infringement claim. Wilchcombe v. Teevee Toons, Inc., 515 F. Supp. 2d 1297, 1303 (N.D. Ga. 2007). The alleged infringer has the burden of demonstrating the existence of an implied license. Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1235 (11th Cir. 2010). To do so, it must show that a party created and delivered a work at the alleged infringer's request with the intent that the alleged infringer copy and distribute the work. Id. To determine whether an implied license exists, courts look at factors that demonstrate the parties' intent, such as deposition testimony and the existence of any

warnings that further use would constitute infringement.  Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 956 (11th Cir. 2009).

Defendants assert that an implied license exists because AppSoft created websites for them and intended that they would copy and distribute those websites worldwide. (Doc. 5 at 14). While Defendants may have had a license to distribute their websites, there is no allegation in the complaints that they were authorized to copy and distribute the copyrighted work, the software. Especially at this stage of the proceedings, where there is no evidence to consider in making a determination, the Court cannot dismiss AppSoft's claim based upon an implied non-exclusive license in the software.

F.      Whether AppSoft Registered a Valid, Original Work

Defendants argue that AppSoft has failed to establish that it registered a valid, original work. (Doc. 5 at 16). A prima facie case of copyright infringement requires a plaintiff to prove that the work is original and that the plaintiff complied with the applicable statutory formalities. Latimer, 601 F.3d at 1232-33. Next, a plaintiff must show that the defendant copied original parts of the work. Id.

Defendants assert that AppSoft's work is comprised of open source code, is not original, and therefore is not entitled to copyright protection. (Doc. 5 at 18). However, the complaints allege that AppSoft is the owner of a copyright for an original work. (Doc. 1 at 8). Defendants' argument that the software is not original is therefore not sufficient, at this stage, to require dismissal.

The Ciocca Dealerships make two additional arguments that AppSoft never registered a valid, original work, both focused on alleged inadequacies in AppSoft's copyright application.[11] First, the Ciocca Dealerships assert that the certificate of registration is facially invalid because it does not describe AppSoft's work in detail and does not establish whether AppSoft complied with application process requirements. (3:13-cv-1521, Doc. 4 at 16). Second, the Ciocca Dealerships argue that AppSoft's application to the Copyright Office was null and void because they allege "upon information and belief" that AppSoft failed to disclose the injunction order from the state court case. (3:13-cv-1521, Doc. 4 at 17).

An owner may not bring a cause of action for copyright infringement unless the owner has registered its copyright with the Copyright Office. 17 U.S.C. § 411 (2012). Even if it contains inaccuracies, a certificate of registration permits the copyright claimant to bring suit unless the claimant put the inaccurate information on the application with knowledge that it was inaccurate, and the Register of Copyrights would refuse registration if it had known of the inaccuracy. Id. If inaccuracy is alleged, courts must ask the Register of Copyrights whether the inaccurate information would have caused refusal of registration. Id. A valid certificate of registration is prima facie evidence of the validity of the copyright so long as it is filed within five years of the

---

[11] The Ciocca Dealerships also argue the complaints should be dismissed because they do not attach the copyright application and do not disclose when AppSoft first published its web-based software. (3:13-cv-1521, Doc. 4 at 16). However, the Ciocca Dealerships fail to cite to any authority suggesting that the complaints must provide such information.

first publication of the work. <u>St. Luke's Cataract & Laser Inst., P.A. v. Sanderson</u>, 573 F.3d 1186, 1201 (11th Cir. 2009).

The Ciocca Dealerships have argued a variety of requirements, with no citation to law, which they assert are necessary to establish the validity of a certificate of registration. However, whether AppSoft properly registered its software, and whether it submitted intentionally inaccurate information, is not something that can be decided on a motion to dismiss.

Accordingly, it is hereby

**ORDERED:**

1.      Defendants' motion to consolidate (Doc. 11) is **GRANTED in part**. The cases will be consolidated for the purposes of discovery and other pretrial matters. The Court will decide whether to consolidate the cases for trial after ruling on any dispositive motions. All future filings should only be filed in 3:13-cv-1520.

2.      Defendants' motions to dismiss (3:13-cv-1520 Doc. 5, 3:13-cv-1521 Doc. 4, 3:13-cv-1522 Doc. 7, 3:13-cv-1523 Doc. 9, 3:13-cv-1524 Doc. 11, 3:13-cv-1598 Doc. 6) are **GRANTED in part** and **DENIED in part** as stated herein. However, AppSoft has leave to amend its complaints as stated herein. AppSoft should file a consolidated amended complaint by **September 9, 2014**. Defendants have until **October 2, 2014** to file a consolidated response to the complaint. If Defendants move to dismiss the complaint, AppSoft must respond by **October 22, 2014**.

3.     Discovery is stayed. The Court will not enter a Case Management and Scheduling Order until the pleadings are settled and the parties have conducted mediation.

4.     The Clerk should assign the Honorable Joel B. Toomey to each of the above-captioned cases.

5.     The Court continues to believe that an early attempt at a global resolution of these cases and the state court case is appropriate. The Court therefore appoints Michael J. Dewberry as the mediator in this matter. Mr. Dewberry will contact the parties to schedule the mediation.

**DONE AND ORDERED** in Jacksonville, Florida the 8th day of August, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies to:

Counsel of record

Michael J. Dewberry
Rogers Towers, PA
1301 Riverplace Blvd – Ste 1500
Jacksonville, FL, 32207